UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE EUGENE WHITE,

Criminal Case Number 13-20423

Petitioner,                    Civil Case Number 21-10865

v.                                                Honorable David M. Lawson

UNITED STATES OF AMERICA,

Respondent.

_____/

### OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Petitioner Jimmie White was convicted by a jury of drug and firearm charges and sentenced to prison, followed by a term of supervised release. His convictions and sentence were affirmed on appeal, and the Supreme Court denied his *certiorari* petition. Although White has completed his sentence and supervised release, he asks the Court in the present motion to vacate his sentence, presumably because of the collateral consequences that come with his convictions. But in his motion, he reiterates arguments that already were rejected or could have been raised on direct appeal, and his claims of ineffective assistance of counsel are without merit. The Court, therefore, will deny the motion.

I.

The Sixth Circuit provided the following comprehensive recitation of the factual and procedural background of the case in its opinion affirming the petitioner's convictions:

> After a months-long investigation into ecstasy trafficking in Detroit, Drug Enforcement Agency ("DEA") agents executed a search warrant at White's home on May 14, 2010. From a locked safe, they recovered over $25,000 in cash, 898 N–Benzylpiperazine Dihydrochloride ("BZP") pills, an unloaded Cobray 9 mm handgun with an obliterated serial number, and an extended magazine loaded with twenty-five rounds of ammunition for the handgun. The safe was divided into two immediately-accessible compartments with the gun and ammunition on one side, and the pills and cash on the other.

The investigation precipitating the search involved several investigation techniques, including a Title III wiretap interception of White's cell phone conversations, and state-issued search warrants to track the location of his cell phone. The Title III wiretap authorized agents to monitor White's calls from early February to early March 2010. During that time, the agents recorded White arranging a series of drug deals. For example, on February 17, 2010, White spoke with an unidentified male calling to "see what the play is," and then requesting "a nickel" of "the fine." White called back the next day, saying he had pills imprinted with airplanes. The client said he wanted "the chalky ones" and "some hitters" because he "d[id]n't want no more complaints[.]" White advised that the "airplanes" and "transformers" were a "good combo," and the two arranged to meet that Saturday.

The agents also obtained search warrants to track the location of White's cell phone. A DEA agent signed the affidavit presented in support of the May 28, 2009, warrant request. A Dearborn Heights, Michigan police officer assigned to the DEA as a task force officer signed the affidavit presented in support of the February 5, 2010, warrant request. To justify the request, the affiants each swore that: "[I]n order to determine where the cellular phone is being used, it is necessary that the above stated records be furnished to your Affiant on a continuous basis until the account is closed, or until known are [White's] drug trafficking activities, his residence, his vehicles and his narcotics distribution associates."

A state magistrate judge issued these warrants for 30 days for the searching of "[a]ny and all records relating to the location of cellular phone tower(s) including specific active GPS precision tracking of cellular phone number (313) 674-6225. Said records shall include the time period from [date], on a continuous basis until [date]."

Based primarily on information obtained through calls intercepted under the Title III wiretap and physical surveillance, a magistrate judge issued a warrant to search White's home. When the search began, White's mother and brother were home. White was also home, asleep in the master bedroom with a female acquaintance. After White emerged from his bedroom undressed, the agents allowed him to return to get some clothing. In addition to White's clothes, the master bedroom contained many other personal items, including his bank statements, debit card, passport, social security card, two driver's licenses, and cell phone. The safe was also in White's bedroom, but the agents had to take it outside and pry it open because neither White nor anyone else in the home would surrender a key or divulge the combination.

While the search was ongoing, DEA agents arrested White and took him to their Detroit office to interview him. The arrest form states White was arrested for "probable cause" and on an outstanding Ohio warrant. White waived his Miranda rights at the DEA office and spoke with the agents. He admitted selling ecstasy for about one year and estimated that he had sold around 10,000 pills. He also admitted

the safe was his, and volunteered that it contained about 900 pills and around $25,000 in cash. White denied knowing about the gun, however, and speculated that someone must have put it in the safe during a party he hosted the previous weekend.

The government did not formally charge White at that time, in part because he promised to cooperate with the DEA. Instead, White was released into state custody and held at the Wayne County jail on the Ohio warrant until he was extradited to Ohio to face state charges pending against him there. He was sentenced in Ohio on October 12, 2010, to time served and released.

On April 29, 2013, the government filed a complaint against White charging him with drug distribution and firearm crimes related to the May 14, 2010, search and seizure. White was arrested on those charges, and an order of temporary detention was entered, on May 2, 2013. He made his initial appearance the next day and was released on bond.

After his arrest, the parties engaged in pre-indictment plea negotiations. To that end, they filed a stipulation with the district court on May 17, 2013, agreeing to adjourn White's preliminary hearing and exclude the time between May 23, 2013, and June 7, 2013, from White's Speedy Trial Act clock. Plea negotiations were not successful, and a grand jury indicted White on June 4, 2013, on the following four counts: [1] conspiracy to distribute BZP and ecstasy or MDMA, 21 U.S.C. § 846; [2] possession of BZP with intent to distribute, 21 U.S.C. § 841(a)(1); [3] possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and [4] possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). White was arraigned on June 12, 2013.

As his case progressed, White filed more than twenty motions, both *pro se* and through counsel. Among them was his motion through counsel to dismiss the indictment for violations of the Speedy Trial Act and the Sixth Amendment's Speedy Trial Clause, and his *pro se* motion to suppress the tracking information derived from the warrants issued for his cell phone. The district court held a hearing on each and denied both.

The district court held a three-day trial. White stipulated to having a prior felony conviction. The government played several of White's cell phone calls for the jury. The government also relied on evidence of the contents of the safe and White's bedroom. Ultimately, a jury convicted White on all counts. The district court sentenced White to 84 months in prison: 24 months on Counts 1, 2, and 4, to run concurrently, and the mandatory minimum of 60 months on Count 3, to run consecutively.

*United States v. White*, 679 F. App'x 426, 428-29 (6th Cir. 2017), *cert. granted, judgment vacated*, 138 S. Ct. 641 (2018). White's prior felony offense included a 2006 conviction for carrying a concealed weapon, which he was barred from possessing due to a domestic violence injunction.

White timely appealed. On appeal, the Sixth Circuit rejected on the merits White's arguments that (1) "the government violated the Speedy Trial Act by failing to file an indictment against him within thirty days of his 2013 arrest," *White*, 679 F. App'x at 430; (2) "the three-year delay between his May 2010 arrest and his September 2013 motion to dismiss violated the Sixth Amendment's Speedy Trial Clause," *id.* at 431; (3) the Court improperly denied his motion to suppress evidence derived from tracking his cell phone, *id.* at 433; and (4) "the evidence presented at trial was insufficient for conviction on either firearm possession charge," *id.* at 433. The court of appeals rejected the first finding because the parties stipulated to exclude two weeks of pre-indictment plea negotiations under 18 U.S.C. § 3161(h)(1) and, "[i]n this Circuit, plea negotiations are 'period[s] of delay resulting from other proceedings concerning the defendant' are automatically excludable under § 3161(h)(1)." *Id.* at 430-31 (citing *United States v. Dunbar*, 357 F.3d 582, 593 (6th Cir. 2004) and *United States v. Bowers*, 834 F.2d 607, 609-10 (6th Cir. 1987)).

White filed a petition for writ of *certiorari* in which he challenged the Sixth Circuit precedent holding preindictment plea negotiations to be automatically excludable under section 3161(h)(1) of the Speedy Trial Act. *See United States v. White*, 920 F.3d 1109, 1110-11 (6th Cir. 2019). The government agreed, and the Supreme Court granted *certiorari* and vacated the Sixth Circuit's judgment. *White v. United States*, --- U.S. ---, 138 S. Ct. 641 (2018). However, on remand, the court of appeals found that White could not overcome plain-error review of his argument, and, "alternatively, the time for preindictment plea negotiations was properly excluded as an ends-of-justice continuance under § 3161(h)(7) of the Speedy Trial Act." *White*, 920 F.3d

-4-

at 1111.  Again, the court of appeals again affirmed the Court's judgment of conviction.  *Ibid.*  The Supreme Court denied White's second *certiorari* petition.

In June 2020, White moved for compassionate release due to his medical vulnerability to complications from COVID-19.  The Court granted the motion.  *See* ECF No. 261.  Then, on April 19, 2021, White filed the instant motions to vacate his sentence under 28 U.S.C. § 2255.  Both a motion and an amended motion were filed on the docket; however, they were filed on the same day and appear to be identical, except that the amended motion includes attachments.  *See* ECF Nos. 265, 269.  While the motions were pending, White also filed a motion for early termination of supervised release.  *See* ECF No. 274.  Because neither the government nor the supervising probation officer objected, the Court granted the defendant's motion and, on April 26, 2022, discharged White from his supervised release term.  *See* ECF No. 276.

II.

Generally, section 2255 affords relief only to those individuals "in custody under sentence of a court established by Act of Congress."  28 U.S.C. § 2255(a).  A prisoner usually is considered to be "in custody" for section 2255 purposes "when he is incarcerated in either federal or state prison, provided that a federal court has sentenced him."  *Ospina v. United States*, 386 F.3d 750 (6th Cir. 2004) (citing *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984)).  However, the Sixth Circuit has acknowledged that a habeas petitioner who has been released may still satisfy the "in custody" requirement of section 2255 "provided he filed the motion while incarcerated and shows that he 'is suffering, and will continue to suffer, serious disabilities' — collateral consequences — as a result of the conviction."  *Pola v. United States*, 778 F.3d 525, 530 (6th Cir. 2015) (quoting *Carafas v. LaVallee*, 391 U.S. 234, 238-39 (1968)).  The Sixth Circuit has deemed petitioners on supervised release to be "in custody" for purposes of section 2255, *Zack v. United States*, 9 F.

-5-

App'x 394, 397 (6th Cir. 2001), and presumes that a petitioner challenging the constitutionality of his underlying conviction will suffer the "lasting collateral consequences" of that conviction, *Pola*, 778 F.3d at 530 (citing *Spencer v. Kemna*, 523 U.S. 1, 12 (1998) and *Sibron v. New York*, 392 U.S. 40, 57 (1968)).

White satisfies both requirements for filing a section 2255 motion in federal court. First, he "meets the statutory definition of those who may seek § 2255 relief," *Pola*, 778 F.3d at 529, because he was serving a term of supervised release when he filed his habeas petition and therefore was "'in custody' for the purposes of § 2255," *United States v. Zack*, 173 F.3d 431 (6th Cir. 1999) (table). Second, White has "standing to seek relief from the federal courts," because White attacks the constitutionality of his underlying conviction and therefore, the Court presumes, also continues to "suffer the burdens of that conviction." *Pola*, 778 F.3d at 529-30.

The Court has jurisdiction to adjudicate the motion and amended motion.

III.

A federal defendant challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). And he "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (holding that "even the

voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (reaffirming that "[s]ection 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process"). Moreover, when a defendant fails to raise an issue at trial or on direct appeal, that issue is generally forfeited. *See Huff v. United States*, 734 F.3d 600, 605-06 (6th Cir. 2013). A claim that would otherwise be forfeited may be raised through a collateral attack under section 2255 if a defendant "can demonstrate cause and prejudice to excuse his default." *Id*. at 606. "Ineffective assistance of counsel can constitute cause for a procedural default." *Ibid*.

And a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). A claim of ineffective assistance of counsel itself is properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

White presents essentially five arguments in his motion, only one of which deserves consideration. The others either were or could have been raised on direct appeal.

*First*, White argues that the Court erred by denying his motion to suppress the evidence obtained from the warrants permitting DEA agents to track the location of his cell phone. He contends that the warrants amounted to general warrants prohibited by the Fourth Amendment and that the good-faith exception to the exclusionary rule should not apply.

*Second,* White argues that the search of his residence was tainted by unlawful warrants that were signed by someone other than the magistrate.

*Third*, White argues that the Court erred by denying his motion to dismiss under the Speedy Trial Act, because the preindictment delay in his case violated the Sixth Amendment, and the government failed to obtain a grand jury indictment within 30 days of his May 2, 2013 arrest.

*Fourth*, White challenges the sufficiency of the evidence regarding his firearm convictions.

*Fifth*, White presents a laundry list of reasons why his counsel was ineffective. Only three are supported by any argument: (A) that counsel failed to argue that White was not a felon for purposes of section 922(g)(1), because his civil rights had been restored under Michigan Compiled Law § 750.224f(1) at the time he was charged with being a felon in possession of a firearm; (B) that trial counsel failed to move for a mistrial or otherwise react to the fact that his tether went off during his jury trial, repeatedly alerting, "Call your officer"; and (C) that White's pretrial counsel, Michael Barnett, improperly was representing other clients in Ohio in 2013 and 2014 and therefore failed to file "a supplemental brief," gave White inaccurate advice regarding the likelihood of his acquittal, and ultimately was disbarred. White attached to his motion the state disbarment papers showing that Barnett committed misconduct in the course of his representation of an unrelated criminal defendant named Niketa Williams beginning in November 2013.

In addition, White mentions that his counsel failed to argue that he never waived his Miranda rights; to investigate prosecution witnesses, to seek the confidential informant, and to enlist experts; to challenge for cause a juror who "did not like drugs"; to challenge his section 924(c) charge on the basis no gun was "loaded and cocked with rounds in the chamber"; and to advise him that he should not stipulate to his prior felony conviction.

A.

Most of White's claims procedurally are barred. His arguments that the Court erred by denying his motion to suppress and motion to dismiss, as well as his insufficiency of evidence

claim, substantively are identical to those he presented in his direct appeal.  White therefore is foreclosed from raising the claims to collaterally attack his conviction and sentence.  "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances," such as an intervening change in the law.  *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quoting *United States v. Brown*, 62 F.3d 1418 (6th Cir.) (unpublished), *cert. denied*, 516 U.S. 942 (1995)); *see also Giraldo v. United States*, 54 F.3d 776 (6th Cir.) (unpublished) ("It is well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in the law."), *cert. denied*, 516 U.S. 892 (1995).  No exceptional circumstances exist here.  *See Lang v. United States*, 474 F.3d 348, 354-57 (6th Cir. 2007) (discussing when section 2255 motions may be filed to address a substantive change in the law).

White similarly is foreclosed from raising his claim about the validity of the signature on the warrants that authorized the search of his residence.  White could have raised that claim on direct appeal but chose not to do so.  That claim "may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."  *Bousley*, 523 U.S. at 622 (citations and quotations omitted).  White has not made a credible showing that he actually is innocent of any of the crimes for which he was convicted or presented any new evidence or facts sufficient "to undermine the confidence in the result of the trial."  *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup*, 513 U.S. at 317).  Nor does he even attempt to justify his failure to raise the issue of the search warrant signatures in his direct appeal.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986).

White has not overcome the procedural default of the first, second, third, and fourth grounds he offered for relief.

-9-

B.

White's claims based on ineffective assistance of counsel remain.  When a defendant raises such a claim in a section 2255 proceeding, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief" on his claim.  *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quotations omitted).  "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," but "[a] petitioner's mere assertion of his innocence, without more, does not entitle him to an evidentiary hearing."  *Ibid.*  And where the record presents "considerable doubt" about the interactions of a petitioner and his attorney, the Court should conduct an evidentiary hearing to bring clarity to the proceedings.  *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).  But where, as here, the existing record demonstrates no significant factual dispute, that the claims of ineffective assistance are unsupported, or that the petitioner has not met the applicable standard, no hearing is required.  *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014).  The record conclusively demonstrates that White's claims of deficient performance are without merit.

An ineffective assistance of counsel claim is not easy to prove.  A defendant must show that his attorney's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688.  White must show here "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that

-10-

the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair [proceeding] . . . whose result is reliable." *Strickland,* 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

1.

White does not explain the factual basis for the majority of his claims, pointing to no evidence and providing no argument in support of his assertions that his attorneys failed to investigate and enlist witnesses, to challenge jurors and the section 924(c) charge, to argue that he never waived his Miranda rights, and to advise him that he should not stipulate to his prior felony conviction. White does not explain how he was prejudiced by any of these purported deficiencies in his attorneys' performance; he offers no facts and does not cite the record. His conclusory claims for ineffective assistance of counsel do not provide grounds for habeas relief. *See, e.g.*, *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) ("[P]etitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof; and his motion is, thus, legally insufficient to sustain a review."); *Goward*, 569 F. App'x at 412 (summarily rejecting habeas claims "unsupported by the record").

-11-

2.

White also contends that his attorney was ineffective by failing to investigate whether he actually was innocent of being a felon in possession of a firearm because his civil rights had been restored at the time of his indictment.  White was convicted for violating 18 U.S.C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition."  The definition of what may serve as a predicate "conviction" under section 922(g)(1) is provided in 18 U.S.C. § 921(a)(20), which states that

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

*United States v. Campbell*, 256 F.3d 381, 391 (6th Cir. 2001) (quoting 18 U.S.C. § 921(a)(20)).  Thus, "the federal felon-in-possession statute involves a two-part inquiry: (1) if a convicted felon's civil rights have been restored under state law, he shall no longer be considered a felon for purposes of § 922(g), except (2) if, pursuant to the 'unless clause' of § 921(a)(20), the felon remains prohibited from firearms possession."  *Id.* at 392.  The Sixth Circuit has stated that "the 'unless clause' applies if the 'restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.'"  *Ibid.* (quoting *United States v. Cassidy*, 899 F.2d 543, 546, 550 & n.15 (6th Cir. 1990)).

To support his argument that his lawyer performed deficiently, White relies on Michigan Compiled Law § 750.224f(1), which states that, "[e]xcept as provided in subsection (2)," a person convicted of a felony may possess or carry a firearm three years after they have paid all fines,

served all terms of imprisonment, and completed all conditions of probation or parole imposed for the violation. However, subsection (2) specifies that persons convicted of "a specified felony" must also comply with the requirements of Michigan Compiled Law § 28.424 before they legally may possess a firearm. And section 28.424 in turn requires those convicted of specified offenses to "petition the circuit court in the county in which he or she resides for restoration of those rights." Under section 750.224f, a "specified felony" includes crimes for which an element of the felony "is the unlawful possession or distribution of a firearm." Mich. Comp. Laws § 750.224f(10)(b).

"It is the status of the defendant on the date he possessed the firearm as alleged in the indictment that controls whether or not he has violated" section 922(g). *United States v. Morgan*, 216 F.3d 557, 565-66 (6th Cir. 2000). White was charged as a felon in possession of a firearm on June 4, 2013. *See* ECF No. 13. At that time, White's right to possess a firearm was restricted under Michigan Compiled Laws §§ 28.422 and 750.224f(2), because his predicate felony conviction was his 2006 conviction for carrying a concealed weapon. *See* PSR, ¶ 36; Mich. Comp. Laws § 750.227. White does not contend, and there is no evidence in the record to suggest, that he had applied to his county concealed weapons board to have his rights restored before his 2013 indictment in this case. Therefore, White's right to possess a firearm was not fully restored at the time he was charged as a felon in possession of a firearm on June 4, 2013, and his claim that he actually was innocent of the section 922(g)(1) charge is without merit. *Campbell*, 256 F.3d at 393-94. Because the claim is without merit, White's trial and appellate attorneys cannot be faulted for failing to raise it. *See Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

White has not shown deficient performance of his lawyers with respect to this claim.

3.

White contends he suffered prejudice because he wore a tether that went off during trial with the jury present.

In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id*. at 629. *Deck's* holding, however, "concerned only visible restraints at trial." *Mendoza v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008). "The Supreme Court was careful to repeat this limitation throughout its opinion," *ibid.*, noting repeatedly that courts cannot place defendants in "*physical restraints* visible to the jury," *Deck*, 544 U.S. at 633 (emphasis added). White does not allege that he physically was restrained during trial; rather, he states that he wore an electronic tether and that the tether's alarm went off during the trial proceedings. He also does not contend that *Deck* applies to tethers and cites no authority in support of his argument that the use of the tether deprived him of a fair trial.

Courts considering analogous claims have refused to extend *Deck* to ankle monitors. *See United States v. Busch*, 411 F. App'x 872, 877 n.3 (6th Cir. 2011) (collecting the "significant authority suggesting that stun belts are *not* generally visible to jurors"); *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1305 (11th Cir. 2019) ("The holdings in *Deck* and *Holbrook* [*v. Flynn*, 475 U.S. 560 (1986)] . . . are not applicable to security devices or measures that are not visible."); *Higgins v. Addison*, 395 F. App'x 516, 519 (10th Cir. 2010) ("Even assuming the ankle monitor was worn during trial and was visible to the jury, [the defendant] has not identified any Supreme Court holding expressly extending the general prohibition on restraining a criminal defendant with visible shackles to the factual situation presented here."). That is not surprising. Unlike shackles, the use of an electronic ankle tether does not "suggest [] to the jury that the justice

-14-

system itself sees a need to separate a defendant from the community at large," interfere with "the accused's ability to communicate with his lawyer," or undermine the Court's ability to "maintain a judicial process that is a dignified process." *See Deck*, 544 U.S. at 630-32 (quotation marks omitted).  A tether therefore does not itself "undermine[] the presumption of innocence and the related fairness of the factfinding process." *Ibid.*

Moreover, White has failed to show "that it is reasonably probable that the result would have been different" had his counsel objected to the use of a tether at trial.  *Busch*, 411 F. App'x at 876 (citing *Strickland*, 466 U.S. at 687).  He has not alleged that the tether was visible to the jury, and there is nothing in the record to suggest that the jury understood that he was wearing a tether, even after the tether alarm went off.  The fact that the tether was attached to White's ankle does not itself suggest that it was visible.  *See id.* at 876-77 (distinguishing a stun belt attached to a defendant's leg from those found to be visible as bulges under clothing).  Nor has White alleged that the tether prevented him from communicating with his attorney or testifying at trial.  *Cf. United States v. Miller*, 531 F.3d 340, 347 (6th Cir. 2008) (discussing defendant's contention that the stun belt "stifled [his] ability to communicate with his counsel due to the threat of being electrocuted," which was "contradict[ed]" by the evidence).

White has not demonstrated that he was prejudiced by his counsel's failure to challenge his tether or otherwise move for relief when the alarm sounded.

4.

Finally, White broadly argues that Marvin Barnett, an attorney who represented White in this case before trial, provided constitutionally inadequate representation because he contemporaneously was engaged in other misconduct during the pendency of White's case.  The record contains evidence that attorney Barnett was suspended in 2015 for conduct related to his 2013-14 representation of Niketa Williams, and that he was disbarred for violating the terms of his

discipline and suspension.  However, the record does not contain any information connecting Barnett's misconduct in the Williams matter to his representation of White.  Although White alleges in his motion that Barnett failed to file an unspecified supplementary brief, White does not explain what the brief addressed or how Barnett's failure to file it prejudiced his case.

White has shown neither deficient performance nor prejudice for this claim.

IV.

The petitioner has not established that his convictions and sentence are infirm in any way or that he received constitutionally inadequate representation in this Court.

Accordingly, it is **ORDERED** that the petitioner's motion and amended motion to vacate sentence (ECF No. 265, 269) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:  March 28, 2023